[Nos. 7457–9–III; 7382–3–III;   Division Three.      February 26, 1987.]
    7467–6–III.

THE STATE OF WASHINGTON, *Respondent*, v. TRACY ALLEN DAY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. TROY ALLEN WHALEN, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN SMITH, *Appellant*.

*Sharon M. Carberry,* for appellants Day and Whalen (appointed counsel for appeal).

*Thomas Bothwell,* for appellant Smith (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Steven R. Keller, Deputy,* for respondent.

McINTURFF, C.J.—Tracy Day and Steven Smith appeal their convictions of second degree burglary. Troy Whalen appeals his conviction of taking a motor vehicle without permission. Because the cases concern identical issues, they were consolidated on appeal. We reverse the convictions of Tracy Day and Steven Smith for violation of the speedy trial rule, and affirm the conviction of Troy Whalen.

### TRACY DAY

The State and defense counsel stipulated to the following facts concerning pretrial activity.

| DATE | TYPE OF ACTIVITY |
|------|------------------|
| 1/1/85 | Burglary committed |
| 1/10/85 | Mr. Day was arrested and arrest report prepared using address given by Mr. Day. Both Mr. Day and his mother advised the reporting officer that the address would soon change |

because of eviction due to the crime.

1/16/85    Mr. Day's statement taken; Mr. Day and mother again advised officer Mr. Day's address would change due to eviction.

2/4/85    Mr. Day's mother gave Detective Park (hereinafter the detective), the reporting officer, their new address.

2/11/85    Information charged Mr. Day with second degree burglary.

2/19/85    Letter from Juvenile Department for a 3/5/85 arraignment mailed to "Tracy allen [sic] Day & Parents" at the earlier address found in the arrest report.

prior to
2/28/85    Mr. Day's mother called the detective about any court appearance and was told that "sometimes it takes a while" but that nothing had been set to his knowledge; mother was not advised to inquire at Juvenile Court.

2/22/85    Juvenile Department's letter sent 2/19 received by Juvenile Department, stamped by Postal Service as "attempted—not known."

3/6/85    Juvenile Court arrest warrant issued.

3/7/85    Mr. Day's mother called the detective and left message of second new, current address. Later in that day, mother called and reached the detective directly, confirmed that he got address, and upon asking of any court date, received information that he didn't know of any court setting; was not referred to Juvenile Court for further information.

3/26 or
3/27    Mr. Day's mother called the detective and got same news as listed in 3/7/85 above.

9/3/85    An attempt was made to serve on Mr. Day a subpoena in an unrelated case; Mr. Day's mother called and found that a Juvenile Court warrant was out on Mr. Day; mother called

Juvenile Court and found out grounds for the warrant.

| | |
|---|---|
| 9/4/85 | Mr. Day came into Juvenile Court voluntarily and was arraigned. |
| 9/12/85 | Defense counsel objected that the arraignment was untimely and entered a plea of not guilty; court directed later submission of argument on arraignment/dismissal issue and directed interim setting of trial date, set for 10/15/85. |
| 10/15/85 | Trial was continued to 10/18/85 for a consolidated argument. |
| 10/18/85 | Mr. Day was found guilty. |
| 10/21/85 | Date of hearing, findings and verdict. |

### STEVEN SMITH

The facts relevant to appeal of the motion to dismiss for violation of the defendant's statutory speedy trial rights are as follows, according to Mr. Smith:

| DATE | TYPE OF ACTIVITY |
|---|---|
| 1/1/85 | Burglary committed in a residence. Steven Smith, Tracy Day and another defendant were also charged in this burglary. |
| 1/3/85 | Mr. Smith's mother, Mrs. Tarin, advised the detective she and her son were leaving for California. Mrs. Tarin gave the detective an address in California where they could be reached. |
| 1/9/85 | Steven Smith gave Yakima County Sheriff's Department a statement and his address. |
| 1/12/85 | Steven Smith and Mrs. Tarin left for California. |
| 2/11/85 | An information was filed charging Mr. Smith with second degree burglary. |
| 3/1/85 | Mrs. Tarin attempted to call the detective, but was unable to reach him. She contacted a friend in Yakima who then gave the detective Mrs. Tarin's phone number. The detective called Mrs. Tarin and told her nothing was happening on her son's case. |

| | |
|---|---|
| 8/1/85 | Mrs. Tarin and Mr. Smith returned to Yakima. Mrs. Tarin called the detective on this day and left him their Yakima address and phone number. |
| 9/4/85 | Mr. Smith was arraigned. |
| 10/18/85 | Mr. Smith was found guilty after a stipulated trial. |

The State conceded it did not have any information to conflict with the facts as presented by Steven Smith. Although it is not clear from the record, in the State's brief the State claims an arraignment letter was sent to Mr. Smith at the local address supplied by the sheriff's office on February 19, 1985, notifying him of arraignment on March 5, 1985, and Mr. Smith did not appear at this initial arraignment, therefore a warrant was issued for his arrest on March 6, 1985.

Further, the State claims the trial was set for October 15, 1985, but continued to October 18, 1985, so that a consolidated argument on untimely arraignment could be made by several defendants.

### TROY WHALEN

The State and defense counsel stipulated to the following facts concerning pretrial activity.

| DATE | TYPE OF ACTIVITY |
|---|---|
| 5/8/85 | Motorcycle stolen. |
| 5/16/85 | Mr. Whalen arrested by Yakima Police (not detained). |
| 5/23/85 | Information filed, charging taking motor vehicle without permission. |
| 5/23/85 | Juvenile Department letter mailed to Troy Whalen & Parents advised of arraignment on 6/21/85. |
| 6/11/85 | Mr. Whalen's mother called Mark Kirschenmann, juvenile probation officer, and advised him that Mr. Whalen was in the hospital and unavailable for 6/21 arraignment. Mother was |

advised of 7/22/85 new arraignment date.

7/22/85    Arraignment.

7/29/85    Argument heard on untimely arraignment; court ruled that 29–day delay between filing of information and arraignment seems excessive, but upon information the mother had notified court officer that Mr. Whalen could not go to original arraignment, ruled that the motion for dismissal was denied. Trial set for 8/27.

9/10/85    Trial continued to this date due to illness of Mr. Whalen's attorney. Mr. Whalen was convicted.

All three defendants claim their convictions should be reversed for violation of JuCR 7.8(b), the juvenile court speedy trial rule. No constitutional error is claimed. An analysis of defendants' speedy trial rights must be broken down into two subquestions: First, did the juveniles' arraignment–to–trial times violate the speedy trial rule? Second, if the arraignment–to–trial times do not violate the speedy trial limits, was the arraignment so delayed that it was not "prompt" as required by CrR 4.1(a)? An additional question applies only to Mr. Smith, due to his absence from the state: what is the impact of JuCR 7.8(e) when an alleged juvenile offender is absent from the court and thereby unavailable for an adjudicatory hearing or preliminary proceedings?

   A. Did the arraignment–to–trial times violate the juvenile speedy trial rule?

JuCR 7.8(b) provides:

   The adjudicatory hearing on a juvenile offense shall begin within 60 days following the juvenile's arraignment in juvenile court on the charges contained in the information. If the alleged juvenile offender is held in detention pending the adjudicatory hearing, the hearing shall begin within 30 days following the juvenile's arraignment in juvenile court on the charges contained in the information.

JuCR 7.8(c)[1] excludes periods from the computation of time for the adjudicatory hearing.

If arraignment does not include a plea, the speedy trial time would commence earlier for these defendants. Defendants argue the definition of juvenile arraignment in *State v. Frazier,* 99 Wn.2d 180, 184, 661 P.2d 126 (1983) should be applied to govern the start of the juvenile speedy trial period. *Frazier,* deciding a plea could not be entered until after the declination hearing, stated that for juvenile court:

> The arraignment procedure essentially consists of ascertaining the defendant's name, advising the defendant of certain rights including the right to counsel, and informing the defendant of the charges that have been filed.

*Frazier,* at 184; CrR 4.1(b)–(e). *Frazier* found the juvenile defendants were arraigned on the date of their first appearance when the above three matters under CrR 4.1(b)–(e) occurred, even though no plea was entered. However, *Frazier* did not analyze the meaning of arraignment for speedy trial purposes.

In *State v. Hovland,* 34 Wn. App. 830, 833, 664 P.2d 524,

---

[1] JuCR 7.8(c), (d) provides:

"**(c) Excluded periods.** The following periods shall be excluded in computing the time for the adjudicatory hearing:

" . . .

"(3) Delay granted by the court pursuant to section (d).

" . . .

"**(d) Continuances.** Continuances or other delays may be granted as follows:

"(1) On motion of the alleged juvenile offender on a showing of good cause.

"(2) On motion of the prosecuting attorney if:

"(i) the alleged juvenile offender consents to a continuance or delay and good cause is shown; or

"(ii) the State's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; or

"(iii) required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.

"(3) The court on its own motion may continue the case when required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense."

*review denied*, 100 Wn.2d 1010 (1983), this court analyzed the meaning of arraignment for speedy trial purposes, applying CrR 3.3 in the juvenile context. CrR 3.3 includes a plea as part of the arraignment process for speedy trial purposes. CrR 3.3(c)(6).[2] However, the *Hovland* holding applies only when a declination hearing is required or the defendant is held in custody or subject to conditions of release, which is not the situation here. Under either *Frazier* or *Hovland* (including or not including a plea), as applied to all three juveniles before us, the arraignment–to–trial times do not violate the rule. Applying the definition of arraignment proposed by defendants to exclude the date the pleas were entered, Mr. Day's arraignment was held on September 4, and the trial occurred on October 18, well within the 60–day limit. Mr. Smith was arraigned on September 4, and his trial held on October 18. Even without excluding intervening days due to a continuance granted to allow a consolidated argument by several defendants on the motion to dismiss due to untimely arraignment, Mr. Smith's arraignment–to–trial period was within the 60–day limit of JuCR 7.8(b). Mr. Whalen was arraigned on July 22, and his trial held on September 10. Even without excluding intervening days due to a continuance granted for the illness of Mr. Whalen's attorney, Mr. Whalen's arraignment–to–trial period was also within the 60–day limit of JuCR 7.8(b).

    B. Were the arraignments so delayed that they were not "prompt" under CrR 4.1(a)?[3]

In *State v. Hovland, supra* at 834, the court held:

[A] juvenile must be arraigned within 14 days after the date the information or indictment is filed if the juvenile

---

[2]CrR 3.3(c)(6) provides:

    "*Arraignment Defined.* As used in CrR 3.3, 'arraignment' means the date on which a plea is entered to the charge."

[3]CrR 4.1(a) provides:

    "**Time.** Promptly after the indictment or information has been filed, the defendant shall be arraigned thereon in open court."

is detained in custody or subject to conditions of release. In cases where a decline hearing is required or requested, the day after the order retaining jurisdiction is entered is the time the computation of 30– to 60–day time frame begins. By then, whether all the elements of an arraignment (name, counsel, reading of charge, and plea) are explicitly fulfilled, each element should have been dealt with in fact; no further arraignment time is necessary. The adjudicatory hearing pursuant to JuCR 7.8(b) must then be held within 30 or 60 days.

The *Hovland* case mandates an arraignment date to start the juvenile speedy trial provisions under JuCR 7.8(b) only when a defendant is in custody or subject to conditions of release or a declination hearing is required. *Hovland,* at 834. Without an extension of the *Hovland* rule, the only requirement for arraignment time to set the starting point for the speedy trial provisions for Mr. Day, Mr. Smith and Mr. Whalen is that the arraignment must be prompt under CrR 4.1(a).

Defendants ask that *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976) be extended to juvenile speedy trial cases. *State v. Striker, supra* at 877, held that where there is an inordinate delay between filing of an information and bringing the defendant before the court, CrR 3.3 is deemed to operate from the time the information is filed.

In the alternative, defendants ask that prompt arraignment be defined analogous to CrR 3.3 limitations to require arraignment within 14 days of the filing of the information. CrR 3.3(c)(1) provides:

**(c) Time for Arraignment and Trial.**

(1) *Cases Filed Directly in Superior Court.* If the defendant is detained in jail or subject to conditions of release, the defendant shall be arraigned not later than 14 days after the date the information or indictment is filed directly in superior court. If the defendant is not detained in jail or subjected to conditions of release, the defendant shall be arraigned not later than 14 days after that appearance in superior court which next follows the filing of the information or indictment. A defendant not released from jail pending trial shall be brought to trial

not later than 60 days after the date of arraignment. A defendant released from jail whether or not subjected to conditions of release pending trial shall be brought to trial not later than 90 days after the date of arraignment.

Local court rules have been adopted in at least two counties which provide a definition for prompt arraignment of a juvenile. For example, in the Superior Court for King County, LJuCR 7.6(a) provides:

Arraignment Calendar.
(1) A case shall be set for the Arraignment Calendar on the court day after it is filed if the juvenile is in detention, and *within two weeks of filing in other cases.*

(Italics ours.) In the Superior Court for Spokane County, LJuCR 7.6 requires arraignment within *14 days* after the filing of the information if the defendant is not held in detention.[4] These local rules reasonably define prompt arraignment.

The policy underlying the juvenile speedy trial rule supports requiring juveniles to be arraigned within a set time frame.

The purpose of speedy trial rules is to assure criminal matters are resolved while they are fresh. This is especially important in the handling of juvenile offenders, and undoubtedly part of the reason why juvenile criminal matters must be tried sooner than adult criminal matters. Delay produced unjust results prior to adoption of the speedy trial rules.

Witnesses became unavailable, memories dimmed, evidence disappeared . . .

*State v. Keller,* 32 Wn. App. 135, 143, 647 P.2d 35 (1982). Further, there is a general policy that criminal rules should be harmonized. *State v. Mack,* 89 Wn.2d 788, 793, 576 P.2d

---

[4]LJuCR 7.6 provides:

"Arraignment.

"(1) Upon the filing of an information as to a juvenile held in detention the clerk of court will schedule an arraignment to be held at the time of the detention hearing scheduled in accordance with LJuCR 7.3(e).

"(2) Upon the filing of an information as to a juvenile not held in detention the clerk of court will schedule an arraignment pursuant to LJuCR 7.5(a) *within 14 days of the filing of the information.*" (Italics ours.)

44 (1978).

Juvenile speedy trial rules do not adequately protect the juvenile's speedy trial rights when a juvenile is not detained or subject to conditions of release after arrest. There is no definition of prompt arraignment in the rules or case law to cover this situation. Hence, the arraignment can be indefinitely postponed and, thus, the juvenile's 60–day arraignment–to–trial time may not result in a speedy trial.

Accordingly, a prompt arraignment means an available juvenile defendant must be arraigned within 14 days after the information is filed. The effect of this holding is to extend our logic in *State v. Hovland, supra,* to cover the situation where a defendant is not in custody, not subject to conditions of release, and no declination hearing is held. Further, our holding comports with the local rules in Spokane and King Counties which reasonably define prompt arraignment.

But an untimely arraignment alone is not a reason to dismiss the charges against a defendant. Rather, 14 days is the maximum time after the information is filed before the speedy trial period commences under JuCR 7.8(b). If the 14–day arraignment time plus the speedy trial time under JuCr 7.8(b) is exceeded without bringing a defendant to trial, the charges against the defendant must be dismissed.

The information against Tracy Day was filed on February 11, 1985. Despite the fact Mr. Day and his mother kept the detective informed of address changes, Mr. Day's first court appearance was September 4, when he voluntarily came into Juvenile Court after inadvertently learning on September 3 that an arrest warrant was outstanding against him. The delay occurred because notice of arraignment was sent to the wrong address. Two hundred five days elapsed between the filing of the information and Mr. Day's first court appearance. Trial was set for October 15, 247 days after the information was filed, excluding continuances on Mr. Day's behalf. This is an inordinate time. His conviction is reversed.

The information against Troy Whalen was filed on May

23, 1985. He was advised his arraignment had been set on June 21, but it was continued to July 22 due to Mr. Whalen's hospitalization. On July 29, trial was set for August 27, but continued to September 10 due to the illness of his attorney. Consequently, there were 29 days between the filing of the information and Mr. Whalen's first court appearance and 67 days, excluding continuances on Mr. Whalen's behalf, between the filing of the information and his trial.[5] The 67 days between filing of the information and trial is less than the 74 days, therefore Troy Whalen's conviction is affirmed.

The information against Steven Smith was filed on February 11, 1985. Mr. Smith's first court appearance was on September 4, when he was first arraigned. Although the period from February 11, 1985 to September 4, 1985 clearly exceeds the 74 days allowed to arraign and bring Mr. Smith to trial, further analysis regarding absence of a juvenile defendant is necessary.

> C. Under JuCR 7.8(e) did Mr. Smith's speedy trial period begin anew when he returned to Yakima from California?

JuCR 7.8(e) provides:

> **(e) Absence of Alleged Juvenile Offender.** In the event the alleged juvenile offender is absent from the court and thereby unavailable for the adjudicatory hearing or for any preliminary proceeding at which his or her presence is required, the time period specified in section (b) shall start to accrue anew when the alleged juvenile offender is actually present in the county where the charge is pending, and his presence appears upon the record of the court.

The State argues Mr. Smith moved to California on January 12, 1985; therefore, he was unavailable for arraignment and trial. Because he was unavailable under JuCR 7.8(e), the speedy trial period under JuCR 7.8(b) began anew

---

[5]Periods excluded on Mr. Whalen's behalf include June 22 through July 21 for Mr. Whalen's hospitalization and August 28 through September 10 for the illness of Mr. Whalen's attorney.

when Mr. Smith was actually present in the county where the charge was pending and his presence appeared upon the record of the court.

Mr. Smith argues, on the other hand, that under *State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979), and *State v. Striker, supra,* unavailability of the defendant can toll the speedy trial period, but the State must demonstrate a good faith, diligent effort to locate and obtain the defendant for trial. Mr. Smith contends since the detective was kept informed of Mr. Smith's addresses in California, his travel to California did not render him unavailable.

*State v. Striker, supra,* and *State v. Alexus, supra,* interpret the statutory speedy trial right only in the adult context. We find it unnecessary to apply the *Striker* rule in the juvenile context because JuCR 7.8(e) specifically provides that the unavailability of a juvenile occurs when the offender is absent from the court.

The speedy trial time for Mr. Smith under JuCR 7.8(b) began anew when Mr. Smith returned to Yakima from California and his presence appeared on the record of the court. Mr. Smith returned on August 1, 1985 and it is uncontested that the detective was then contacted and given Mr. Smith's new Yakima address and phone number.

The personnel of the court, the prosecutor's office and the police or sheriff's office must be treated as one entity when determining if there was knowledge of the defendant's whereabouts. *State v. Carpenter,* 94 Wn.2d 690, 694, 619 P.2d 697 (1980) (focus of speedy trial inquiry was on the police department's knowledge of defendant's whereabouts, not the knowledge of the prosecutor's office); *State v. Edwards,* 94 Wn.2d 208, 213, 616 P.2d 620 (1980) (court refused to view prosecutor's office separately from police department in speedy trial determination); *but cf. State v. Pacheco,* 107 Wn.2d 59, 71, 726 P.2d 981 (1986) (Brachtenbach, J., concurring).

We hold August 1, 1985 is the date Mr. Smith's presence in Washington was known to the court officer and therefore imputed to the court. Trial was set for October 15 and con-

tinued to October 18, 1985. This is 75 and 78 days, respectively, from the August 1 presence in court, ergo, is beyond the 74 days allowed to arraign and bring the defendant to trial. Mr. Smith's conviction is reversed.

■ Defendants' second contention is that the juvenile court lacked in personam jurisdiction over them because the arraignment letters sent to defendants to notify them of their first court appearances were not summonses which complied with RCW 13.40.100.[6] We reach this issue in the case of Troy Whalen because his conviction was affirmed under the juvenile speedy trial rule. Although the procedures do not meet the requirements of the statute, this is not grounds to dismiss for lack of in personam jurisdiction.

---

[6]There are two primary deficiencies alleged by defendants: (1) that an arraignment letter was used instead of a formal summons; and (2) a single letter was mailed to the juvenile and his parents as opposed to separate notification to the juvenile and to the parents.

JuCR 7.5 provides: "After an information has been filed, a summons shall issue and be served pursuant to RCW 13.40.100".

RCW 13.40.100 provides: "[T]he alleged offender shall be notified by summons, warrant, or other method approved by the court of the next required court appearance." It further provides: *"If notice is by summons, the clerk of the court shall issue a summons directed to the juvenile . . . and another to the parents".* (Italics ours.)

Originally, RCW 13.40.100 provided for only one method of notice, service by summons on child and parent. Laws of 1977, 1st Ex. Sess., ch. 291, § 64, p. 1032 (effective July 1, 1978). However, in 1979, RCW 13.40.100 was amended to provide notice by summons, warrant or other method approved by the court. Laws of 1979, ch. 155, § 62, p. 841 (effective March 29, 1979).

*State v. Ryan,* 103 Wn.2d 165, 178, 691 P.2d 197 (1984) held that the court's rulemaking power is supreme where the court rule is inconsistent with a procedural statute. This case recognized that apparent conflict should be harmonized when possible so both can be given effect. *State v. Ryan, supra* at 178.

Here, the discrepancies between RCW 13.40.100 and JuCR 7.5 are apparent, the court rule specifies a summons while the statute, in its provision for "other methods", would permit use of an arraignment letter. Also, the statutory requirement of separate notice to the juvenile and to the parents, when the notice is by summons, is not being followed. The conflicts between RCW 13.40.100 and JuCR 7.5 cannot be reconciled; therefore, the juvenile arraignment letter procedure is inadequate under JuCR 7.5.

We note proposed changes to JuCR 7.5 respond to the conflict between JuCR 7.5 and RCW 13.40.100. See proposed rules publication, January 6, 1987, Washington Reports advance sheet, at xxix.

CrR 2.2(f) provides that if a person is arrested under a warrant or appears in response to a summons, a dismissal is not the remedy for an irregularity in the warrant or summons; rather, the warrant or summons may be amended. Further, a court's jurisdiction arises from the defendant's presence in court on the date of his arraignment. *State v. Melvern*, 32 Wash. 7, 12, 72 P. 489 (1903); *Mercer Island v. Crouch*, 12 Wn. App. 472, 474, 530 P.2d 344 (1975). The Juvenile Court had in personam jurisdiction over Troy Whalen.

The judgment in regard to Troy Whalen is affirmed; the judgments in regard to Tracy Day and Steven Smith are reversed and the informations dismissed with prejudice.

MUNSON and THOMPSON, JJ., concur.